UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GABRIEL DEON LOGAN | CIVIL ACTION NO. 06-cv-0226 |
| VERSUS | JUDGE STAGG |
| WARDEN LOUISIANA STATE PENITENTIARY | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Gabriel Deon Logan ("Petitioner") of second degree murder in connection with the killing of a Pizza Hut delivery man who was shot during a robbery. Several witnesses testified that, as the victim delivered pizza, Petitioner was seen removing something from underneath his shirt and passing it to co-defendant Williams, who then placed it under his shirt. Three shots were heard soon afterward. A witness saw Williams run down the street as the pizza delivery car drifted down the street until it hit a house. Witnesses testified that Petitioner ran to the car, opened the door, pulled the victim out of the car, and went through his pockets. Some witnesses said Petitioner tried to drive away in the car. They also said that Petitioner walked away from the car with pizzas, a money bag, and a warming satchel.

A witness stated that Petitioner and another man later removed a gun from a barbecue pit, wiped it, and buried it inside a potato chip bag. Police recovered the .25 caliber handgun, and the coroner testified that a .25 caliber bullet passed through the heart and lungs killing

the victim. An eyewitness stated that Petitioner was wearing a gray shirt at the time of the incident. A search of Petitioner's mother's house revealed a gray shirt, which belonged to Petitioner, with bloodstains on the back and sleeves that were determined to be the victim's blood. Petitioner's mother testified that Petitioner had arrived at her house, carrying a box of pizza, on the night of the murder.

The jury found these and other facts sufficient to convict Petitioner of second degree murder. Petitioner's conviction and mandatory life sentence were affirmed on direct appeal. State v. Logan, 822 So.2d 657 (La. App. 2d Cir. 2002), writ denied, 853 So.2d 621 (La. 2003). Petitioner then pursued a post-conviction application before filing his federal petition for writ of habeas corpus. It is recommended, for the reasons that follow, that the petition be denied as untimely.

**Running of One-Year Limitations Period**

A one-year period of limitations applies to petitions for habeas corpus. In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The first step in assessing timeliness is, therefore, to determine when Petitioner's conviction became final and triggered the commencement of the one-year limitations period.

In a typical case where a convicted person timely pursues his direct appeal through a writ application to the Supreme Court of Louisiana, the conviction becomes final for

purposes of Section 2244 ninety days after the state's high court enters its judgment, which is when the time to file a petition for writ of certiorari with the United States Supreme Court has expired. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). The rule is different if the defendant does not complete the appellate process and reach the state's highest court. "If the defendant stops the appeal process before that point, the conviction becomes final when the time for seeking further direct review in the state court expires." Roberts, 319 F.3d at 694.

The State asserts that Petitioner's conviction became final, and the limitations period commenced, when Petitioner did not *timely* file a writ application to the Supreme Court of Louisiana (direct review application) within 30 days after the state appellate court's decision issued. Louisiana Supreme Court Rule X, § 5(a) provides that an application for supervisory writ "shall be made within thirty days of the mailing of the notice of the original judgment of the Court of Appeal [subject to exception when a timely application for rehearing is filed]."

The appellate court rendered its judgment on June 14, 2002, and there is no suggestion that it did not follow its ordinary practice of mailing a copy of the decision on the same day it issued. (State appellate court officials have advised, as this issue is present in many habeas cases, that direct appeal opinions are released on particular release days, and all opinions released that day are also mailed that day.) Thirty days from July 14, 2002 was Sunday, July 14, 2002. The general rule of La. C.C.P. art 5059 is that if the last day of a period to act

falls on a weekend or holiday, the period runs until the end of the next business day. The court will assume this rule applies to the writ application deadline, so that Petitioner had until Monday, July 15, 2002 to file his application.

Petitioner mailed a pro se writ application from prison. Louisiana Supreme Court Rule X, § 5(d) provides that an application "properly mailed shall be deemed timely filed if mailed on or before the last day of the delay for filing." Furthermore, the Fifth Circuit has held that Louisiana's prison mailbox rule is applicable to the filing of an application for direct review. Causey v. Cain, 450 F.3d 601 (5th Cir. 2006). Thus, Petitioner needed to deliver his application for direct review to prison officials by Monday, July 15, 2002 for it to be timely.

The record does not include a copy of the actual direct review application. The State represents that it never received from Petitioner a service copy of the application and, due to damage to the Supreme Court of Louisiana's older records caused by Hurricane Katrina, the State is unable to produce the writ application. Of course, the application itself often does not bear evidence of when it was tendered to prison officials for mailing. It will likely show only the date that Petitioner ostensibly signed the application.

The record does include a letter from the Supreme Court of Louisiana that acknowledged receipt of the direct review application. Tr. 981. The letter states, in pertinent part, as follows:

> This is to advise that the pleadings in the above entitled matter were received and filed on 8/14/02. The filing was metered on 7/26/02.

It is routine for this court to have to explore and determine the timeliness of habeas petitions. State court practices and procedures, written and unwritten, often bear upon the timeliness analysis. The court has, therefore, contacted the Supreme Court of Louisiana in the past and inquired as to the meaning of "metered" in letters such as the one issued in this case. The Clerk of Court advised that the "metered" date is the date applied by the postage meter that marked the envelope that contains the application. This serves as evidence of filing under the mailing and presumption rules set forth in Rule X, § 5(d) (subject to judicial exception for the prison mailbox rule). Accordingly, the Supreme Court's letter indicates that prison officials affixed postage to the envelope that contained the application 11 days *after* the deadline for Petitioner to tender the envelope to prison officials for mailing.

The State, in its memorandum, challenged Petitioner to produce any prison mailing records to show that he delivered the application on an earlier, timely date. Petitioner stated in his Traverse (Doc. 15) that "if" he had access to prison mailing records he might be able to show that he delivered the writ to prison authorities timely. Petitioner made no explanation as to why he did not have access to those records. A review of other parts of the record, including Petitioner's submission at Doc. 7, showed that he managed to obtain copies of a number of his requests for legal/indigent mail, inmate account statements showing withdrawals for postage, and similar records in connection with his post-conviction

application filings/mailings. Those documents often contain dates that would be quite relevant to this issue. Petitioner does not explain why such records are not available to him with respect to the mailing of his direct review application.

The evidence that is available shows that the item was metered with postage 11 days after the deadline for tendering it to prison officials. Given that rather significant passage of time, it is unreasonable to find or presume the item was tendered by the deadline. Thus, it is incumbent upon Petitioner to produce evidence that he tendered the item to prison officials at the much earlier date. The record indicates that Petitioner has access to relevant mail records, but he has not produced any such records or any other evidence of a timely tendering of the item. Based on these facts – and neither party suggests that there are any additional facts to offer on the issue – the court finds that the direct review application was not timely filed.

The Fifth Circuit faced a similar situation in Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) when the prisoner did not file his direct review application until 12 days after the deadline. The Supreme Court of Louisiana, both in Butler and in this case, later issued a one-word decision that the application was "Denied." Tr. 982; Butler, 533 F.3d at 318. The Fifth Circuit held in Butler that the conviction became final on the deadline for timely seeking Supreme Court review, which in this case was July 15, 2002.

Petitioner's untimely direct review application was later filed and remained pending until denied on September 19, 2003. Butler squarely held that the time during which the

untimely application was pending did not affect the running of the limitations period or result in statutory tolling. There is also no suggestion whatsoever that Petitioner either applied for or received any extension of time from the Supreme Court of Louisiana that would cure the untimeliness. The same was true in Butler, 533 F.3d at 319.

The one-year limitations period began when the conviction was final on July 15, 2002 and ran without interruption until it expired on Tuesday, July 15, 2003. The pendency of the untimely direct review application during that time was of no effect. Petitioner later filed a post-conviction application in February 2004. There is statutory tolling during the pendency of a properly filed application for post-conviction review. 28 U.S.C. § 2244(d)(2). But "it was too late for a federal petition even before the state (post-conviction) petition was filed." Butler, 533 F.3d at 318. "There was nothing to toll." Id. The post-conviction application was, therefore, meaningless as to the timeliness of the federal petition.

**Equitable Tolling**

Petitioner makes a conclusory request in his Traverse (Doc. 15) for equitable tolling. He asserts, without explanation, that this case presents rare and extraordinary circumstances beyond his control  A habeas petitioner may benefit from equitable tolling if he shows: (1) diligent pursuit of his rights and (2) that some extraordinary circumstances stood in his way. Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007). The doctrine applies in "rare and exceptional circumstances" such as where the court has misled the petitioner into believing that his petition is due after the limitations period has passed. Id. Excusable neglect and

ignorance of the law, however, are not sufficient to justify equitable tolling. Id.

Petitioner has not presented any facts that would justify application of this extraordinary doctrine. Petitioner missed a filing deadline, which is not uncommon, and there is no hint that his delay is attributable to anything other than his own neglect or oversight. The only reasonable exercise of the court's discretion in these circumstances is to hold that Petitioner has not demonstrated that equitable tolling is applicable. Thus, the petition is untimely, and there is no need to address the merits.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Petitioner's complaint be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of November, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE